# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 9, 2013

## TERRY WAYNE ROBINSON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C-11-253      Donald H. Allen, Judge**

**No. W2012-01014-CCA-R3-PC  -  Filed May 16, 2013**

The petitioner, Terry Wayne Robinson, appeals the denial of his petition for post-conviction relief.  The petitioner was convicted of one count of theft of property over $10,000, a Class C felony, and sentenced as a multiple offender to ten years in the Department of Correction. On appeal, he contends that the post-conviction court erred in denying his petition because he was denied his right to the effective assistance of counsel.  Specifically, he contends that trial counsel was ineffective by failing to interview witnesses and by failing to insist that the petitioner testify at trial.  Following review of the record, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR. and JEFFREY S. BIVINS , JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Terry Wayne Robinson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; James G. Woodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History and Factual Background

The relevant facts underlying the petitioner's conviction, as recited by this court on direct appeal, are as follows:

> The [petitioner] was indicted on the charge of theft of property over $60,000 as a result of his selling several of his employer's manufacturing tools

to a scrap metal recycling center. At trial, Robert Sharra, Operations Manager for Foam Fabricators, a manufacturing facility in Madison County, testified that the [petitioner] worked for Foam Fabricators as a temporary employee from September 4 until October 6, 2008. Sharra said that, periodically, their customers authorize Foam Fabricators to scrap tools no longer in use, and the money received from the recycling center is deposited into a fund for employee bonuses. Sharra stated that he was the only one authorized to take scrapped tools to a recycling center and that he never let other employees, including the [petitioner], do that for him. Sharra never used S.M.C. Recycling, a recycling center in Selmer, because he preferred to "stay close to the local economy."

Sharra testified that he noticed that a tool was missing in September 2008, which led him to conduct an inventory in November that revealed at least fourteen tools were missing. Based on when the tools were last used, Sharra determined that they were stolen sometime between August and November. Using old invoices, Sharra estimated that the cost to replace the stolen tools was $159,506. He explained that the tools were heavy-duty items that retained their value. In an effort to investigate who had stolen the tools, Sharra took photographs of similar tools to local recycling centers. Sharra discovered that the items had been scrapped at S.M.C. Recycling.

Kevin Roberts, an employee of S.M.C. Recycling, testified that the [petitioner] came into S.M.C. "several times" between September and November 2008 to sell scrap metal. Roberts had a receipt showing where the [petitioner] sold a 591-pound piece of equipment to S.M.C. on September 22, 2008. Roberts said that the [petitioner] was alone on one or two occasions and accompanied by Eldon Rogers the other times. However, Rogers never came without the [petitioner]. Sometimes the men requested that the check be made out to the [petitioner] and other times made out to Rogers. Roberts identified three receipts in Rogers' name, dated September 11, 24, and 30, 2008. Roberts recalled that Sharra came to the center and showed him photographs of items. Roberts told Sharra that "it hadn't been long ago that [he]'d bought some materials that looked just like that." On cross-examination, Roberts admitted that he gave a statement to a police investigator several months before trial in which Roberts said that he recalled seeing the [petitioner] and Rogers at the recycling center on "[a]t least two" occasions.

Eldon Rogers, the co-defendant, testified that he worked at Foam Fabricators approximately one year before the thefts. At that point, he and the

[petitioner] had been friends for twenty years. Rogers admitted that he had taken items from a recycling dumpster at Foam Fabricators without permission and had the items recycled at S.M.C. Rogers said that the [petitioner] was with him on one or two occasions, but the other times he went alone. According to Rogers, the [petitioner] was aware that the goods were stolen and received half of the proceeds. Rogers said that the [petitioner] also called him a few times about taking some items to S.M.C.

On cross-examination, Rogers admitted that he had pled guilty to stealing items from Foam Fabricators and had received a sentence of twelve years on probation. Rogers said that he had gone to S.M.C. Recycling about eight or nine times, and the [petitioner] was with him only on one or two occasions. He said that Kevin Roberts was incorrect if he said that Rogers never brought things to the recycling center without the [petitioner]. On redirect examination, Rogers stated that there were occasions when he saw items from Foam Fabricators in the [petitioner's] truck and that he had not helped the [petitioner] put those items in the truck.

*State v. Terry Robinson*, W2010-00145-CCA-R3-CD, 2011 WL 914976 (Tenn. Crim. App., at Jackson, Mar. 16, 2011).

The petitioner was indicted by a Madison County grand jury for one count of theft of property valued over $60,000. Following a jury trial, he was convicted of the lesser offense of theft of property valued over $10,000. He was sentenced to serve ten years in the Department of Correction for the offense. He filed a direct appeal raising the issues of sufficiency of the evidence and prosecutorial misconduct in closing arguments, and this court affirmed the judgment of conviction. *Id*. at *1 Thereafter, the petitioner filed a timely petition for post-conviction relief. Counsel was appointed, but no amended petition was filed. In his petition, he alleged that he had been denied his right to the effective assistance of counsel, specifically arguing that trial counsel was ineffective in his failure to investigate and interview others possibly involved in stealing from the company. A hearing was held at which only trial counsel and the petitioner testified.

Trial counsel stated that he was appointed to represent the petitioner on the theft charge. He testified that he received discovery from the State and shared and discussed that information with the petitioner. Trial counsel testified that he met with the petitioner at the jail twice, as well as two to three times during court. According to trial counsel, there was no dispute that the petitioner was involved in at least some of the instances of theft, as he was identified by a recycling center employee and had presented his driver's license to complete the sale. However, the State was only able to conclusively prove that the petitioner was

-3-

involved on those two to three occasions. The strategy developed for trial was to focus on the value of the items taken and hope for a verdict on a lesser-included offense. Trial counsel believed that the real issue at trial was one of value. He testified that he believed that the value was no more than $1,000.

Trial counsel also testified with regard to information given to him by the petitioner that his supervisor at the company was also scrapping some items himself. Trial counsel stated that he sent an investigator to the company and even obtained copies of checks from the recycling center made out to Mr. "Sherrod."[1] Despite the fact that the check was made out to Mr. Sherrod personally, at trial, he claimed it was for the company's benefit and was done with his employer's knowledge. Trial counsel testified that he heavily questioned Mr. Sherrod on this point during his trial testimony. He also cross-examined Mr. Sherrod about the petitioner's claim that some of the items the petitioner was accused of stealing had been removed from a dumpster. Mr. Sherrod testified that the items were by the dumpster, but the company did not intend to discard them. Trial counsel testified that Mr. Sherrod's testimony was the only evidence presented of the value of the items stolen. Mr. Sherrod indicated that the stolen moldings were worth more to the company than what the petitioner received at the recycling center because they were specialized. Trial counsel testified that he did not personally believe Mr. Sherrod's testimony and tried to impeach him heavily while he was on the witness stand.

Trial counsel recalled that the petitioner's co-defendant also testified against him at trial. Mr. Rogers had already pled guilty to the crime and was given a twelve-year sentence, suspended to probation following service of eleven months and twenty-nine days, in exchange for his testimony against the petitioner. Again, trial counsel indicated this information was brought out at trial. Nonetheless, trial counsel felt that Mr. Rogers "was very articulate and . . . seemed pretty honest for the most part" when he testified at the trial.

Trial counsel also testified with regard to the defendant's decision not to testify. He indicated that it was discussed on several occasions and acknowledged that it was his recommendation to the petitioner that he did not testify in his own defense. Trial counsel stated that this advice was based upon the fact that the petitioner had prior convictions and because of other problematic issues which might arise if the petitioner testified. However, trial counsel was clear that the final decision was made by the petitioner.

Trial counsel stated that he did not call any defense witnesses in this case and, further, that the petitioner had not given him any suggestions for possible character witnesses. Trial

---

[1]In this court's direct appeal opinion, the petitioner's supervisor's name was spelled "Sharra." However, the post-conviction transcript lists the spelling as Sherrod.

-4-

counsel also indicated that he did not interview any employees from other recycling centers in preparation for trial. Trial counsel reiterated that the main issue in the case was valuation, and he stated that he tried to figure every way to make his argument to the jury. Looking back, trial counsel could think of nothing that he would have done differently. He felt he was prepared to question the State's witnesses, was prepared for trial, and made all the necessary objections.

The petitioner also testified at the hearing. According to the petitioner, he was aware that Mr. Sherrod and other employees were also taking materials from the company and selling them at various recycling centers. He testified that he told trial counsel this and asked him to go to other recycling centers in an attempt to establish this. According to him, trial counsel refused to do so. The petitioner testified that he was forced to go to the trial court and have trial counsel ordered to obtain the information. According to the petitioner, this occurred two to three days prior to the trial date, and, while trial counsel did obtain some information regarding Mr. Sherrod, there was not enough time to visit several other recycling centers. The petitioner also faulted trial counsel in his cross-examination of Mr. Sherrod, whom the petitioner believes was lying at trial.

The petitioner did acknowledge that he had committed the theft of some of the items for which he was charged, but he maintained that he did not take everything listed. He testified that he received $505.91 from a recycling center, and he felt that he should have only been convicted of theft of property valued at under $500.

The petitioner did acknowledge that, other than failing to obtain information about other employees possible theft, he felt that trial counsel did a "pretty good" job representing him. When cross-examined by the State, the petitioner testified that his main point of contention with trial counsel was that he had failed to obtain and present evidence that other employees were stealing from Foam Fabricators and selling the items as scrap at other recycling centers. The petitioner also testified that he made the decision not to testify at trial because of his criminal record.

After hearing the evidence presented, the post-conviction found that the petitioner had failed to establish his claim and denied the petition. The petitioner has timely appealed that decision.

**Analysis**

On appeal, the petitioner contends that the post-conviction court erred in denying his petition for relief because trial counsel was ineffective in his representation. In order to obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence

is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103 (2010); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal defendant has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland*, 466 U.S. at 687-88. Failure to satisfy either prong results in the denial of relief. *Id*. at 697.

For deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms, despite a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 688-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Prejudice in turn requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. The court clarified that prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings de novo with a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. But the trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

On appeal, the petitioner specifically contends that trial counsel was ineffective for: (1) failing to interview all witnesses involved in the case and obtain transactions from various recycling businesses; and (2) failing to strongly insist that the petitioner testify at trial. In denying relief, the post-conviction court made the following findings on the record:

> You know, this is a case where [the petitioner] was charged with Theft of Property over $60,000 which is a B felony. Of course, there was proof presented by the State that this property was actually valued at approximately $159,000. Obviously, [trial counsel] . . . was able to convince the jury that this property was not valued at that amount, so the jury found [the petitioner] guilty of a lesser amount, a lesser charge with that being Theft of Property over $10,000, but certainly less than $60,000.

> Now, you know, I've heard the testimony of [the petitioner] here today. He says his attorney . . . actually did a pretty good job is what he said. He said he thought [trial counsel] maybe should have asked more questions than what he did and the way I understand [the petitioner], he feels like perhaps he should have been convicted of something less than this $10,000 amount. I mean, I don't think he's denying that he along with Mr. Rogers were involved in committing the theft of these items from their employer.

> The way I recall the proof, Mr. Rogers had been working there for

-7-

several years and then [the petitioner] was employed there at this Foam Fabricators and during a period of several months they started taking these molds that were being used by the business or at least owned by the business and started taking these items to this scrap metal business, S.M.C., and I do recall there was some testimony about they took it out of town to Selmer so that it wouldn't be as suspicious or wouldn't be traced back to them here in Jackson. I don't think [the petitioner] is denying that he committed at least some theft and the issue just comes down to a question of the value.

The jury has already heard all of the evidence and considered all of the evidence and found him guilty of Theft over $10,000. That was his grounds for appeal. The Court of Criminal Appeals looked [at] this and felt like that there was sufficient evidence to support the verdict. I mean, they affirmed the conviction for Theft of Property over $10,000.

You know, the issue here today is whether or not [trial counsel] was ineffective in his representation of [the petitioner]. Again, the way I understand [the petitioner's] testimony, maybe [trial counsel] should have asked more questions or maybe [trial counsel] should have done some further investigating about perhaps other employees stealing from this business, but that doesn't affect his representation in this case.

Based upon the proof presented here today and I do credit the testimony of [trial counsel]. I know [trial counsel] said he met with his client on at least two different occasions down in the jail. He met with him on at least three different occasions while he was here in court. [Trial counsel] cross-examined all of the witnesses and did a very good job of presenting the [petitioner's] case. Of course, [the petitioner] chose not to testify in this matter, but [trial counsel] was facing a pretty difficult task because he's having to cross-examine a codefendant who had already admitted and pled guilty to being involved in Theft of Property over $10,000 and he is also implicating his friend, his close friend. I think they had been friends for years and maybe even related, but the State had a strong case considering the testimony of the manager of Foam Fabricators. He indicated the property was taken and he indicated what the value was. The codefendant, Mr. Rogers, testified that [the petitioner] assisted him in stealing some of these items, taking some of these items to this scrap metal place and receiving I believe half of the money from the [sale] of these valuable items.

So certainly the evidence was sufficient in this case and I don't find

-8-

there's anything to support the fact that [trial counsel] was ineffective. [Trial counsel] did a very good job in this matter, just unfortunately the facts were against [the petitioner]. The proof was against him that he committed the theft.

The Court finds that the Petitioner . . . has failed to prove his allegation of ineffective assistance of counsel.

## I. Failure to Interview Witnesses/Obtain Transactions

In his brief, the petitioner makes the blanket statements that: (1) "Petitioner argues that [trial counsel] should have interviewed all witnesses involved in this case."; (2) "Further, [trial counsel] should have obtained transactions from the recycling business as [the petitioner] requested. These actions would have persuaded the jury to render a verdict on the actual value of the items." There is no other supporting argument included in the brief before us, other than a recitation to relevant standards of post-conviction law. Based upon this, this court could deem this issue waived. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Nonetheless, based upon the interest of justice, we will address the merits of the petitioner's issues.

Nothing in the record preponderates against the post-conviction court's findings that trial counsel was not deficient in failing to interview other possible witnesses or obtain transactions from different recycling centers. As noted by the court, those actions don't affect the petitioner's "representation in this case." The petitioner was charged with taking materials from Foam Fabricators and selling those materials at S.M.C. We fail to see, as did the post-conviction court, how evidence of sales by different employees at different recycling centers would have benefitted the petitioner's defense. Evidence that theft was occurring by others did not relieve the petitioner of his responsibility for the items taken and sold by him. Trial counsel testified that he did conduct an investigation into actions by Mr. Sherrod's activities and even found proof of a check written to him personally from a recycling center. Trial counsel presented that testimony to the jury through his cross-examination at trial. Based upon the evidence presented, including the testimony of the co-defendant, the jury chose to convict the petitioner of the theft of the items sold to S.M.S. Recycling.

Moreover, the petitioner has also failed to establish his claim by presenting no evidence at the post-conviction hearing as to what trial counsel would have discovered had he interviewed other witnesses or obtained transactions from other recycling center. This court has repeatedly held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should

be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The presentation of the witness at the post-conviction hearing is typically the only way for the petitioner to establish:

> (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

*Id*. Neither the post-conviction court nor this court may speculate on "what a witness's testimony might have been if introduced by defense counsel." *Id*.

No such witnesses were presented at the hearing, nor was any evidence of other transactions presented to the post-conviction court. As such, the petitioner has conclusively failed to establish the prejudice prong of his claim.

## II. Decision to Testify

The petitioner also contends that trial counsel was ineffective for failing to "strongly insist[]" that he testify in his defense at trial. According to the petitioner, even though he had impeachable convictions, his testimony could have helped his defense on the issue of value, the main issue in the case. However, nothing in the record preponderates against the post-conviction court's finding that trial counsel was not deficient.

The testimony of both trial counsel and the petitioner was that the petitioner made the choice to not testify because of his criminal record, which could be used to impeach him. By law, that decision rests with a defendant. An attorney's job is give effective advice in aiding the decision making process of his client, but the decision is to be made solely by the client himself. Trial counsel testified in this case that he felt it would not be in the petitioner's best interest to take the stand to testify, and he stated that he so advised the petitioner. That opinion was based upon trial counsel's experience and the facts of the case. Ultimately, it was the petitioner's decision, and trial counsel had no duty to "strongly insist" that the petitioner testify when he felt it would be detrimental to the defense.

Regardless, despite the petitioner's claim to the contrary, he offered no testimony at the post-conviction hearing, which if given at trial, would have "helped his defense on the issue of value." By failing to do so, he has failed to establish that prejudice resulted. *See id*. The post-conviction court is not required to speculate as to what the petitioner would have

said if he had testified at trial. *Id*. Moreover, testimony was given at trial with regard to the amount of money the petitioner received from the recycling center the times he directly received payment from them. What the petitioner's argument fails to encompass is the different valuations at issue in his case. The petitioner even gave testimony at the hearing that he did not understand the distinction. Replacement cost, or value of the item, is not limited to the amount of money which the petitioner received when he sold the items at the recycling center. The petitioner had no evidence to offer with regard to any other valuation in the case. He is entitled to no relief on this issue.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.


_____

JOHN EVERETT WILLIAMS, JUDGE